# THE FELICE B.[1]

## BERTSCHMANN et al. v. THE FELICE B.

*(District Court, E. D. New York. December 6, 1889.)*

1. **MARITIME LIENS—ITALIAN VESSEL—MASTER'S WAGES.**
   The master of an Italian ship has a lien on the vessel for his wages, which is recognized in this court.

2. **SAME—MASTER'S ADVANCES—PRIORITY—BOTTOMRY BOND.**
   The lien for wages and advances of the master of an Italian vessel takes precedence of the lien of a bottomry bond, on which the master is not personally liable.

**SAME—MATERIAL-MEN—PRIORITIES.**
   The lien of material-men, for the value of whose services the master is personally liable, is superior to a lien for the master's wages.

**SAME.**
   The lien of material-men is superior to the lien of a bottomry bond when the services of the material-men have tended to make the ship more valuable, or when delay in enforcing the bottomry has tended to induce the services of the material-men.

**SAME—ELECTION OF REMEDIES.**
   Where material-men have proceeded under the twelfth admiralty rule against the vessel instead of the master, such election does not destroy their right to proceed against the master for the same debts.
   *The Aina, ante,* 269, distinguished.

In Admiralty. On application to determine the priority of liens.

*Sidney Chubb,* for Bertschmann.

*Ullo & Ruebsamen,* for material-men and seamen.

*R. D. Benedict,* (*E. G. Benedict,*) for the master.

*Wing, Shoudy & Putnam,* for Revere Copper Co.

*Fredk. W. Hinrichs,* for Empire Warehouse Co.

BENEDICT, J. The bark Felice B., an Italian vessel, sailed from the port of Pensacola, Fla., bound for a port in England, with a cargo of lumber. While pursuing her voyage she met with disaster, and was compelled to put into the port of New York in distress, being then subject to bottomry for the sum of $1,170.80 placed on her in Pensacola. Upon arriving in New York she was surveyed, and then repaired under the direction of the master. In some way not explained the cargo shipped in Pensacola was gotten rid of in New York. The voyage to England was then abandoned, and at the time of commencing these proceedings the vessel was about to load for Australia. Thereupon she was libeled by Bertschmann, the holder of the bottomry. No person intervening in her behalf, a decree by default was entered in favor of Bertschmann, and the vessel was sold by the marshal. The proceeds of the sale amounted to $8,000. Subsequently the material-men who had repaired and supplied the vessel after her arrival in New York; also the agent who had attended to her business, and made certain advances for her in New York; also her crew, for wages; also the mate, for his wages and advances, and the master, for his wages and advances,—filed petitions to be paid out

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

of the proceeds. Proof having been made of the respective claims, each libel and petition being considered as an answer to all the other libels and petitions, all the claims are now before the court for a determination as to the rights of the parties in the fund in court. The claims in all, including costs, amount to about $10,869.

I first consider the claim of the master of the vessel. This claim consists of two parts,—one for the master's wages; the other for sums advanced by him for the necessities of the vessel while under his command. As against this claim the bottomry holder contends that the master has no lien either for his wages or for his advances. But the bark was an Italian bark, and under the Italian law, which has been put in evidence, the master has a lien for his wages; and, not being personally liable for the bottomry bond, is entited to priority in payment over the bottomry. In regard to the other part of the master's claim, viz., for sums advanced by him towards the necessities of the ship while under his command, this, also, is covered by the Italian law. The language of that law is, "wages and compensation" due the master, etc. Class 7, art. 675, Italian Code, cited in *The Olga*, 32 Fed. Rep. 329. The word "compensation" must be intended to cover such claims as the master's advances; otherwise there is no provision in the Italian Code for this most common claim against a vessel by the master. My conclusion in regard to the demand of the master is that he is entitled to be paid his wages and advances out of the proceeds of the sale of the vessel, and that as between him and the bottomry bond he is entitled to priority in payment.

As against the debts due material-men incurred by the master in New York, the master cannot claim priority in payment because of the fact that he is personally liable for the same debts. It has been insisted upon behalf of the master that the twelfth admiralty rule compels a material-man to elect between a proceeding *in rem* against the vessel, and a proceeding *in personam* against the master; and that inasmuch as in this case the material-men have proceeded against the vessel, no personal liability of the master for the demand remains. No authority is cited which supports this understanding of the effect of the twelfth admiralty rule, and I do not so understand the rule. Notwithstanding the rule, it is still open in my opinion to the material-men to bring an action at law or a suit in admiralty against the master for the same debts here in question. For this reason the master cannot here claim priority in payment over the material-men. *The Olga*, 32 Fed. Rep. 331.

The claim of the mate has not been objected to. He will therefore be paid prior to the bottomry bond.

As to the demand of the material-men, objection is made in behalf of the bottomry holder that he is entitled to priority in payment over any debts due the material-men for repairs and supplies, and for services rendered to the vessel subsequent to the breaking up of the voyage. In regard to these demands, which consist of actual repairs put upon the vessel, and which tended to increase her value, equity requires that such demands should be paid prior to the bottomry, for the reason that these

repairs have gone to enhance by so much the proceeds of the sale of the vessel now in court, and cannot with justice be applied to the payment of the bottomry.

As to the demands which consist of advances made by the ship's agent and the interpreter, the bottomry holder cannot claim preference, because his delay to enforce the bond tended to induce the incurring of these expenses. His bond became due, by its terms, on the arrival of the vessel in New York. He took no steps to enforce it until all the debts in question had been incurred. He should not be permitted to lie back in this way and allow expenses to be incurred, and then contend that his bond should be paid in preference to such expenses. As between the materialmen, the agent, and the interpreter, the question of priority must therefore be decided adversely to the bottomry bond. This leaves a deficiency greater than the sums in these respective bills which the bottomry holder has insisted carried no lien, and it becomes unnecessary, therefore, to decide the question of lien which has been raised on this occasion.

Reference has been made on the argument to the case of *The Aina, ante,* 269, lately decided in this court, and the point taken that the question of lien was not open to be contested by the bottomry holder; but the practice pursued in this case is different from the practice pursued in the case of *The Aina.* In this no interlocutory decree has been entered in favor of any party except Bertschmann, the bottomry holder, and all other demands are before the court as upon final hearing upon pleadings and proofs. It is open to the bottomry holder, therefore, to raise the question of lien as against any of the petitioners; but as already stated the disposition made of the question of priority renders a decision of the question of lien unnecessary at this stage of the case. If subsequently a decision upon those points should be desired, my attention can be called to it by the parties interested.